FILED
CLERK
5/9/2016 12:20 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
C.K., T.K., on behalf of A.K., and A.K.

                           Plaintiffs,

       -against-                         **MEMORANDUM OF**
                                                   **DECISION & ORDER**
BOARD OF EDUCATION OF THE WESTHAMPTON      15-CV-4743(ADS)(SIL)
BEACH SCHOOL DISTRICT,

                           Defendant.
---------------------------------------------------------------------X

**Mayerson & Associates**
*Attorneys for the Plaintiffs*
330 West 38th Street, Suite 600
New York, NY 10018
       By: Gary S. Mayerson, Esq., Of Counsel

**Devitt Spellman Barrett, LLP**
*Attorneys for the Defendant*
50 New York 111
Smithtown, NY 11787
       By: Anne C. Leahey, Esq.
          David H. Arntsen, Esq.
          Kelly E Wright, Esq., Of Counsel

**SPATT, DISTRICT JUDGE**

      This case arises from allegations by the Plaintiffs C.K., T.K., and A.K. (collectively, the "Plaintiffs") that the Defendant the Board of Education of the Westhampton Beach School District (the "WB Board") denied A.K., an adolescent diagnosed with Down Syndrome, admission into the Westhampton Beach Union Free School District Middle School (the "Westhampton Middle School") based on a pre-existing policy of discrimination against educating severely disabled students.

      On December 18, 2015, the Plaintiffs filed an amended complaint seeking a declaratory judgment finding that the WB Board violated A.K.'s rights under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 (the "IDEA"); Title II of the Americans with Disabilities Act 42 U.S.C. § 12132 (the "ADA"); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (the "Rehabilitation Act"); and the Civil Right Acts, 42 U.S.C. § 1983 ("Section 1983"). The

Plaintiffs also seek injunctive relief directing the WB Board to admit A.K. as a seventh grade student in the Westhampton Middle School, as well as attorneys' fees and costs.

Presently before the Court is a motion pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "Rules") 12(b)(1) and 12(b)(6) by the WB Board to dismiss the amended complaint in its entirety.

The Court is concerned with the allegations in the amended complaint that schools officials from the Westhampton Union Free School District ("Westhampton") and the WB Board allegedly refused to engage in any meaningful discussions with the Plaintiffs regarding potential accommodations that could meet A.K.'s needs and enable him to attend the Westhampton Middle School. However, in the Court's view, those concerns should first be addressed by local and state educational agencies, not by this Court. Therefore, for the reasons set forth below, the Rule 12(b)(1) motion by the WB Board is granted.

## I. BACKGROUND

The following facts are drawn from the amended complaint unless otherwise specified.

The Plaintiff A.K. was born on September 7, 2002. He is currently thirteen-years old and has Down Syndrome.

The Plaintiffs C.K. and T.K. are A.K.'s parents. A.K. resides with them in the Remsenburg/Speonk School District ("Remsenburg") located in Suffolk County.

Westhampton is a local educational agency and school district organized under New York law.

As will be discussed in detail below, the IDEA entitles disabled children, such as A.K. to a "free and appropriate public education." Pursuant to the IDEA and implementing New York statutes, a Committee on Special Education ("CSE") develops an Individualized Education Program ("IEP") for every disabled child to ensure that the child receives such an education. By law, the CSE consists of a team which includes the child's parents, teachers, representatives of the district, and where appropriate, the child.

2

Remsenburg is an elementary school district which ends at grade six. When children finish sixth grade at Remsenburg, they ordinarily have a choice between attending middle school and high school in the Eastport/South Manor School District ("Eastport") or Westhampton.

To that end, Remsenburg entered into a contract with Westhampton by the terms of which Westhampton agreed that children of school age in grades 7 to 12 who reside in Remsenburg "shall be entitled to be to be taught in [Westhampton]."

A.K. attended elementary school through grade 6 in Remsenburg. As a result of his disability, A.K. requires "alternate assessments," which means that he is not assessed in the same manner as typically developing less impaired special needs students. Accordingly, A.K. does not take the same State and district-wide standard assessments that are administered to general education students and less impaired special needs students. Rather, his academic performance is evaluated using "alternative performance indicators."

During 2013–2014, when he was in fifth grade, and 2014–2015, when he was in sixth grade, A.K. attended an Integrated Co-Teaching ("ICT") class at Remsenburg. These classes were taught by a general education teacher and a special education teacher and included both typically developing students and students with special needs.

Pursuant to his IEP for those years, A.K. also received additional support and services from Remsenburg, including Speech and Language Therapy, Occupational Therapy, Physical Therapy, and a 1:1 teacher's aide, meaning the teacher's aide solely focused on him.

Although he is cognitively impaired, A.K. is well-adjusted socially. To that end, he has made friends, attended birthday parties, and is involved in multiple community events and groups, such as little league, with his disabled and typically developing classmates in Remsenburg. His classmates affectionately refer to him as "the Mayor" of his Sixth Grade class because of his beloved status.

The overwhelming majority of A.K.'s typically developing and special needs peers have chosen to attend the Westhampton Middle School, not the Eastport Middle School for the 2015 to 2016

3

school year. As a result, it has always been A.K.'s desire to attend school in Westhampton so that he can remain with the majority of his friends from Remsenburg. In addition, C.K. and T.K., A.K.'s parents, also want A.K. to attend school in Westhampton, in part, because A.K.'s younger typically developing siblings eventually will choose to attend the Westhampton Middle School when they reach the seventh grade.

However, the amended complaint alleges "upon information and belief" that the WB Board has for decades refused to educated more seriously impaired, alternatively assessed special needs students, such as the Plaintiff. It further alleges "upon information and belief" that Westhampton Middle and High Schools have never educated a student with Down Syndrome.

In 2007 and 2008, when A.K. first entered the Remsenburg Elementary School, his parents were allegedly informed by unnamed individuals that A.K. would never be permitted to attend Westhampton schools once he reached the seventh grade because of his disability.

In the 2013-2014 and 2014-2015 school years, A.K.'s parents reached out to Westhampton administrators to start making arrangements for A.K. to attend the Westhampton Middle School beginning in 2015-2016. Allegedly, these officials refused to engage with A.K.'s parents.

On March 30, 2015, the CSE held a meeting during which members from Remsenburg recommended that due to A.K.'s "instructional and management needs," A.K. required a school that offered a "8:1:1" student-teacher staffing ratio — meaning a class with eight students, one teacher, and one teacher's aide. (See Seaman Aff., Ex. C, at p. 2.) In response, A.K.'s parents stated their preference was for A.K. to attend middle school and high school in Westhampton and rejected the "8:1:1" recommendation because the Westhampton Middle School only had a "15:1:1" program. (Id. at p. 3.) Instead, they proposed that Westhampton adopt a hybrid program whereby A.K. would be placed into a 15:1:1 class and receive academic instruction for most of the day in a 1:1 resource room. (Id.) Jan Achilich ("Achilich"), the CSE Chair and Special Education Director, adjourned the CSE

4

meeting so that she could propose the idea to the New York State Education Department ("NYSED"). (See id.)

On April 24, 2015, the CSE reconvened. At the meeting, Achilich stated that NYSED's Regional Office advised her that the recommendation by A.K.'s parents that A.K. be placed in a resource room with 1:1 teacher-student ratio for A.K.'s primary academic instruction was not authorized under the IDEA and New York State regulations. (See id.)

In light of this information, the CSE recommended that A.K. be placed in a 8:1:2 special class. A.K.'s parents disagreed with the CSE's recommendation. (See id. at pp. 3–4.)

On May 22, 2015, C.K. and T.K. filed a due process complaint against Remsenburg on A.K.'s behalf requesting an impartial hearing and seeking a less restrictive placement for A.K. in the Westhampton Middle School for the 2015–2016 school year. (See Compl., Ex. B; see also Seaman Aff., Ex. C.)

On June 8, 2015, Remsenburg filed an answer to the due process complaint, denying the Plaintiffs' claims. (See Seam Aff., Ex. C.)

On June 17, 2015, the parties held a resolution conference during they agreed to the outlines of a stipulation to resolve the Plaintiffs' due process complaint (the "Stipulation"). (See Seaman Aff., Ex. E.)

Under the terms of the Stipulation, Remsenburg and the Plaintiffs agreed that A.K.'s IEP would be amended for the 2015-2016 year to require the following special services:

> (a) a 15:1:1 small, self-contained class placement;
> (b) a resource room in a 3:1:1 setting, 5 times per week for 40 minutes;
> (c) a 1:1 teaching assistant for 6 hours 30 minutes per day;
> (d) a consultant for integration (support for school staff) sixty hours for the school year; [and]
> (e) the related services of speech language therapy, physical therapy and occupational therapy . . . .

(Id. at ¶ 2.)

In addition, the Stipulation required Remsenburg to "submit a letter to Westhampton Beach to have the program as outlined above, implemented at Westhampton Beach Middle School. Should Westhampton Beach accept the student, the District shall cooperate to have the program implemented." (Id.).

On July 9, 2015, in compliance with the terms of the Stipulation, Lisa H. Hutchenson, Esq. ("Hutchenson"), an attorney representing Remsenburg, sent a letter to Kevin Seaman, Esq. ("Seaman"), counsel for Westhampton. (See Seaman Aff., Ex. A.) In the letter, Hutchenson set forth the above-described changes to A.K.'s IEP and stated:

> As a public school, [Remsenburg] believes that [Westhampton] is able to implement the referenced program. Although your client indicates there is no teaching assistant available to work with your students, [Remsenburg] believes one can be obtained for fulfilling the needs of this child's IEP. Similarly, [Remsenburg] believes that the general education curriculum within the 15:1:1 can be appropriately modified in order to meet [A.K.'s] academic needs. Likewise, to the extent [Westhampton] does not currently carry a 3:1:1 resource room, [Remsenburg] believes such [an] accommodation can easily be created to meet the needs of [A.K.]. In other words, while implementation of this unique IEP may be [a] departure from [Westhampton's] usual practices, [Remsenburg] believes that it can be implemented with little burden on [Westhampton].

(Id.)

On July 14, 2015, Westhampton filed a letter with Robert Briglio, Esq. ("Briglio"), the impartial hearing officer presiding over the Plaintiffs' due process complaint, requesting permission to intervene in the matter so that it could have an opportunity to be heard with respect to the Stipulation. (See Seaman Aff., Ex. D, at p.1) Specifically, according to Westhampton, it was not "in a position to accommodate the severely intellectually disabled child [i.e. A.K.] in a 15:1:1 class that possesses Regents-track students being administered the State's intensive core curriculum." (Id. at p. 2.)

On August 3, 2015, prior to a decision by Biglio on Westhampton's motion to intervene, the Plaintiffs and Remsenburg finalized a stipulation of settlement and general release resolving the Plaintiffs' due process complaint. (See Compl., Ex. B.)

After signing the Stipulation, the Plaintiffs again offered to meet with the WB Board to "create an appropriate IEP program for A.K. to be implemented" at the Westhampton Middle School.

6

However, the Board again denied the Plaintiffs' request and refused to admit A.K. into the Westhampton Middle School.

On August 13, 2015, the Plaintiffs commenced this action against the WB Board requesting an injunction directing the Board to permit A.K. to attend the Westhampton Middle School for the 2015–2016 school year.

As noted, on December 18, 2015, the Plaintiffs amended their complaint, adding a claim for a judgment declaring that the WB Board implemented a discriminatory policy in violation of A.K.'s rights under the IDEA; the ADA; Section 504 of the Rehabilitation Act; and Section 1983.

During the pendency of this action, A.K. has repeated the Sixth Grade and continued to attend an ICT class at Remsenburg.

Presently, the WB Board moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) because it asserts that (i) the Plaintiffs failed to exhaust their claims against the WB Board as is required under the IDEA; and (ii) the Plaintiffs lack standing because they do not have a legally protected interest in having A.K. attend Westhampton Middle School.

In addition, the WB Board moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action under the IDEA; Section 1983; the ADA; and the Rehabilitation Act.

For their part, the Plaintiffs dispute each of the contentions by the WB Board.

The Court agrees that the Plaintiffs have failed to exhaust their claims under the IDEA and therefore, the Court lacks subject matter jurisdiction over this action. Accordingly, the Court need not reach the WB Board's standing or its Rule 12(b)(6) arguments.

## II. DISCUSSION

### A. As to the Standard of Review

"'Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court

lacks the statutory or constitutional power to adjudicate it.'" Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (quoting Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Thus, the Court will consider the documents related to the due process complaint filed by the Plaintiffs against Remsenburg offered by the WB Board in support of its motion to dismiss even though those documents are not attached to the amended complaint. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 (2d Cir. 2001) ("Our rule is that, on a 'challeng[e][to] the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'") (alterations in original) (quoting parenthetically Antares Aircraft, L.P. v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992)).

"'The party invoking federal jurisdiction bears the burden of establishing' that jurisdiction exists." Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)). "'[W]here, as here, the case is at the pleading stage and no evidentiary hearings have been held,' however, '[i]n reviewing the grant of a motion to dismiss [under Rule 12(b)(1) ] we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) (alterations in original) (quoting Sharkey, 541 F.3d at 83). "Nevertheless, even 'on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Sharkey, 541 F.3d at 83).

## B. As to the Relevant Statutory Framework

The purpose of the IDEA is, among other things, to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and

related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C.A. § 1400(1)(A).

To that end, "[t]he IDEA requires states receiving federal special education funding to provide disabled children with a [Free and Appropriate Public Education or "FAPE"]." T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151 (2d Cir. 2014) (citing M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013)). "To ensure that qualifying children receive a FAPE, a school district must create an individualized education program ("IEP") for each such child." R.E. v. New York City Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012). The IEP, in turn, is "a written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 507-08 (2d Cir. 2006) (quoting Honig v. Doe, 484 U.S. 305, 311, 108 S. Ct. 592, 98 L.Ed.2d 686 (1988)); see also 20 U.S.C. § 1414(d)(1)(A) (defining "IEP").

As already noted, the IEP is developed by a team, which is known in New York as a CSE, that includes the child's parents, teachers, and representatives of the local education agency. See 20 U.S.C. § 1414(d)(1)(B); N.Y. Educ. Law § 4410–b(1)(c). "As a general rule, [the] IDEA requires that, at least once a year, the CSE review the IEP and make any necessary revisions." Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ., 827 F. Supp. 2d 130, 136 (E.D.N.Y. 2010) (citing 20 U.S.C. § 1414(d)(4)(A)(i)).

## C. As to Whether the Exhaustion Requirement Applies to the Plaintiffs' Claims

As noted, the amended complaint seeks a declaratory judgment that the WB Board implemented a discriminatory policy in violation of the IDEA, the ADA, the Rehabilitation Act, and Section 1983; and a preliminary and permanent injunction against the WB Board directing it to admit A.K. into the seventh grade class of Westhampton Middle School.

The WB Board asserts that all of the Plaintiffs' claims — including the ADA, Rehabilitation Act, and Section 1983 claims — are subject to the exhaustion requirement of the IDEA. (See the Board's Mem. of Law at 11, 15–17.) As there is no dispute that the Plaintiffs did not exhaust their claims prior to commencing this action, the Board contends that the Plaintiffs' claims fail to satisfy the exhaustion requirement, and therefore, this case should be dismissed for lack of subject matter jurisdiction. (See id.)

For their part, the Plaintiffs do not dispute that their claims are subject to the exhaustion requirement of the IDEA but contend that the claims falls under an exception to that requirement for claims that allege systemic violations that cannot be remedied on the administrative level. (See the Pls.' Mem. of Law at 9–14.) The Court disagrees.

"Under the educational scheme of the IDEA . . . , parents of students with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (quoting Honig v. Doe, 484 U.S. 305, 311–12, 108 S. Ct. 592, 98 L.Ed.2d 686 (1988)). In that regard, "[p]arents may request a hearing to present complaints relating to the 'identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004) (quoting 20 U.S.C. § 1415(b)(6)). Under New York law, parents may avail themselves of two-tiers of administrative review of IEPs:

> First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the New York Education Department.

Cave, 514 F.3d at 245 (citing Heldman on Behalf of T.H. v. Sobol, 962 F.2d 148, 152 (2d Cir. 1992))

"'It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court.'" Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 204-05 (2d Cir. 2007) (alteration omitted) (quoting J.S, 386 F.3d at

112). "Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction." Cave, 514 F.3d at 245.

"The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 487 (2d Cir. 2002). Specifically, the "'[e]xhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.'" Id. (quoting Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992)).

"Importantly, complainants must overcome this significant procedural hurdle not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief available under the IDEA, regardless of the statutory basis of their complaint." Cave, 514 F.3d at 246; see also 20 U.S.C. § 1415(1). In other words, "[t]he IDEA statute requires plaintiffs with any claims related to the education of disabled children, whether brought under IDEA or another statute (e.g., the Rehabilitation Act), to exhaust the administrative remedies available under IDEA prior to initiating a federal lawsuit." Kalliope R. ex rel. Irene D., 827 F. Supp. 2d at 137.

As noted, the Plaintiffs do not dispute that their claims under the IDEA, the ADA, the Rehabilitation Act, and Section 1983 are all subject to the exhaustion requirement. However, they contend their claims fall under the "futility" exception to the exhaustion requirement. (See the Pls.' Mem. of Law at 9–14.)

In that regard, the Second Circuit has stated that "[t]he exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy."

11

Cave, 514 F.3d at 249 (citing Honig v. Doe, 484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)). "To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.'" Coleman, 503 F.3d at 205 (quoting J.G. v. Bd. of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447 (2d Cir. 1987)). "The party seeking to avoid exhaustion bears the burden of showing futility." Cave, 514 F.3d at 249 (citing Polera, 288 F.3d at 488 n. 8).

One potential basis for futility that the Second Circuit has previously recognized is where a plaintiff alleges "systemic violations that could not be remedied by local or state administrative agencies 'because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.'" Id. (quoting J.S. ex rel. N.S., 386 F.3d at 114). "The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones." King v. Pine Plains Cent. Sch. Dist., 918 F. Supp. 772, 781 (S.D.N.Y. 1996). Accordingly, "requiring a parent to exhaust his administrative remedies when he is challenging a generally applicable policy or procedure would be futile." Id.

For example, in J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107 (2d Cir. 2004), the Second Circuit found that the claims of six students against a school district under the IDEA, the Rehabilitation Act, and Section 1983 did fall within the systemic violation exception to the exhaustion requirement because "the complaint d[id] not challenge the content of Individualized Education Programs, but rather the School District's total failure to prepare and implement Individualized Education Programs." Id. at 115. The complaint also included numerous examples of systemic problems at the school district, including:

> failure to perform timely evaluations and reevaluations of disabled children; failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children; and failure to perform legally required responsibilities in a timely manner, including providing and

> implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities.

Id.

The Plaintiffs also rely on several district court cases to support their contention that their allegations of "systemic violations" and a discriminatory policy on the part of Westhampton fall within the futility exception to the exhaustion requirement of the IDEA.

First, in Michaels ex rel. Michaels v. Mills, No. 02-CV-0555E (F), 2004 WL 816918, at *1 (W.D.N.Y. Feb. 14, 2004), a mentally and emotionally disabled student asserted claims under the IDEA and other statutes against New York State educational officials arising from his placement into an adolescent treatment center and a residential education program. The court found that the student's claim arising from his placement at the treatment center was subject to the exhaustion requirement because it involved "factual and legal questions" that the court concluded were better left "to the expertise of the involved agencies." Id. at *3. However, the court found that the student's claim arising from his placement into the residential education program did fall into the futility exception because "[p]laintiff has alleged that defendants have adopted a policy or practice of failing to provide sufficient programs for disabled students – such as himself – in [Western New York] and that such policy or practice violates, *inter alia*, the IDEA." Id.

Second, in King v. Pine Plains Cent. Sch. Dist., 918 F. Supp. 772 (S.D.N.Y. 1996), the parents of a disabled student challenged a CSE's decision to place their child in a local public school instead of a residential treatment facility despite documented evidence of the student's behavioral issues. Id. at 777. The parents in that case filed a due process complaint against the school district, appealing the IEP placement recommendation. Id. During the pendency of their due process appeal, a family court judge in a separate proceeding ordered the student to be placed in the treatment center. Id. Subsequently, an Impartial Hearing Officer ("IHO") issued a decision finding that the student's IEP was inadequate and recommending that he be placed in a residential treatment facility. Id. However, the IHO ruled that the parents were not entitled to reimbursement from the school district for costs

13

associated with sending their child to the treatment center. Id. After exhausting their administrative appeals against the school district, the parents brought suit in federal court against the school district and the Duchess County Department of Social Services ("Duchess DSS"), among other state agencies, seeking reimbursement for their tuition expenses and alleging violations of the IDEA and other federal statutes. See id. at 776.

In King, DSS moved to dismiss the complaint for lack of subject matter jurisdiction because the parents had failed to exhaust their administrative claims against DSS. See id. at 780–81. The district court denied that motion, finding that the claims against DSS fell within the futility exception to the exhaustion requirement. See id. at 780–81. The court noted that DSS's decision to require the parents to financially contribute to their child's placement in a treatment center after a family court ruled that it was necessary for the benefit of his education was a violation of the IDEA. See id. Because the complaint alleged that the DSS decision was made pursuant to a "generally applicable policy" which violated the law, the court found that resort to administrative proceedings would have been futile because the IHO would not have authority to change such a policy. Id.

Third, in Andree ex rel. Andree v. Cty. of Nassau, 311 F. Supp. 2d 325 (E.D.N.Y. 2004) (Spatt, J), the parents of two children asserted that their rights under the IDEA and other federal statutes were violated when the Nassau County Department of Social Services ("Nassau DSS") imposed medical liens on the children's personal injury awards for reimbursement of monies paid by the Nassau DSS to the children's local schools for special education and related services. This Court found that the DSS actions violated the IDEA. See id. at 333. Further, as the complaint alleged that Nassau DSS filed improper medical liens against the two students as part of a *de facto* policy that was contrary to the law, the Court found that the exhaustion requirement of the IDEA did not apply to their claims. Id. at 333–34.

However, courts in this Circuit have found that allegations of discrimination on the part of school districts are not sufficient to excuse the IDEA exhaustion requirement in cases where those

allegations are tied to the events, conditions, or consequences of an individual student's IEP. That is because those complaints can be remedied at the administrative level and therefore, resort to the administrative process would not be futile. See Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 505 (S.D.N.Y. 2011) ("Because all of Plaintiffs' claims of discrimination relate to the interplay between Daniel's disability and his education, whether the Amended Complaint adequately alleges facts sufficient to state a claim under these other statutes is entirely irrelevant."); Wang v. Williamsville Cent. Sch. Dist., No. 08-CV-575S, 2010 WL 1630466, at *6 (W.D.N.Y. Apr. 21, 2010) ("Plaintiffs' attempt to recast their claims is unavailing. What they are alleging, in essence, is that the District knew it had certain obligations to KG because of his medical conditions, but it failed to act on that knowledge when it let another factor take precedence. The gravamen of their claim is the failure to provide appropriate services to KG; the purported reason for the failure — race discrimination — is secondary.").

For example, in Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240 (2d Cir. 2008), the parents of a hearing-impaired student asserted claims under Section 1983, the ADA, and several New York statutes arising from a CSE's decision to deny his parents' request to the district to permit him to bring a service dog to school. On appeal, the child's parents asserted that the IDEA exhaustion requirement did not apply to their claim because their claim was "not one of violation of the IDEA's mandate for the provision of a 'free appropriate public education' to each disabled student, but a claim of unlawful discrimination." Id. In other words, the plaintiffs asked the court to treat "John, Jr. not as a student who is being deprived of an appropriate public education, but as a person who is being denied access to a public facility by reason of his disability and his non-educational need for a service dog." Id.

In Cave, the Second Circuit rejected the plaintiffs' argument, stating, "We are not convinced that appellants' claims are materially distinguishable from claims that could fall within the ambit of the IDEA." Id. The Circuit Court reasoned that the school officials testified before the district court that

they denied the student's request for a service dog because "his existing IEP would have to be changed to accommodate the concerns of allergic students and teachers and to diminish the distractions that Simba's presence would engender." Id. The Court found that "[t]hese issues implicate John, Jr.'s IEP and would be best dealt with through the administrative process." Id. at 247–48. In addition, the Court rejected the plaintiffs' related argument that the case implicated the futility doctrine:

> Here, an individual student complains about the school's denial of his request that a service dog be permitted to accompany him in class. There is no allegation of a system-wide violation of the IDEA's mandates or of a district-wide policy of discrimination against hearing-impaired students. Nor do appellants make a plausible argument that the administrative process is so structurally tainted that they would not have been afforded a fair and impartial forum to present their claims.

Id. at 250.

In Hope v. Cortines, 872 F. Supp. 14, 16 (E.D.N.Y.), aff'd, 69 F.3d 687 (2d Cir. 1995), the parents of a dyslexic student sought a preliminary injunction in federal court compelling the New York City Board of Education and several of its representatives to change the student's IEP to adopt the treatment recommendations provided by an independent medical expert who had evaluated the student. As in Cave, the plaintiffs in Hope sought to reframe their claims against the school as discrimination claims, asserting that the school's refusal to provide the plaintiff-student with services was the result of unlawful discrimination on the basis of his race and his disability. See id. at 16.

However, the district court in Hope found otherwise and applied the IDEA exhaustion requirement, reasoning:

> [The] Plaintiffs request for temporary and permanent injunctive relief imposing upon defendants the requirement to provide the services and accommodations identified in the Mount Sinai Report indisputably raises issues addressable under IDEA. Plaintiffs in substance challenge the adequacy of the IEP created for Moyo and seek imposition of their own more expansive IEP. This is precisely the type of remedy best fashioned by the educational experts skilled in developing such programs and provides a textbook example of the types of cases justifying administrative exhaustion.

Id. at 21 (alteration added).

In addition, the court in Hope found that the futility exception for systemic violations and policies contrary to law did not excuse the plaintiffs' failure to exhaust their claims. See id. at 22. In

so doing, the court acknowledged that the "plaintiffs allege in conclusory terms that '[t]he practices and actions complained of herein are, on information and belief, typical of the practices and actions experienced by African–American and Latino students in need of supportive services within the defendant Board of Education.'" Id. at 23. It further noted that "[t]his allegation, which the [c]ourt deems true for purposes of this analysis, arguably states a facial violation of IDEA on the ground that defendants engaged in wide-spread, systemic discrimination and 'adopted a policy or pursued a practice of general applicability that is contrary to the law.'" Id.

However, the court found that these alleged policies related to the action of local schools, not State actors. See id. Therefore, even assuming this allegation to be true, the court found that allegations against a local school were better suited to the States under the IDEA's administrative scheme than a federal district court because the "purpose of the exhaustion doctrine would be undercut by allowing plaintiffs to seek redress in this tribunal rather than affording the state (and defendants) the opportunity to rectify any errors." Id.

In the present case, the Plaintiffs, similar to the plaintiffs in Cave and Hope, seek to re-cast their claims as arising from the WB Board's alleged discriminatory policy of refusing to admit severely disabled children into their schools — "[t]he Plaintiffs do not seek an 'optimal program' for A.K . . . . [The] Plaintiffs simply ask that [the] Defendant Westhampton be enjoined from discriminating against A.K. based solely on the nature of his disability[.]" (See the Pls.' Opp'n Mem. of Law at 6.) To that end, they seek declaratory relief stating that the WB Board's alleged discriminatory policy violates the IDEA, the ADA, the Rehabilitation Act, and Section 1983; as well as injunctive relief directing the WB Board to admit A.K. into the Westhampton Middle School for the 2016 to 2017 school year.

However, in the Court's view, the latter request — namely, an injunction permitting the Plaintiff to attend the Westhampton Middle School — is the Plaintiffs' primary request for relief in this action. Indeed, the amended complaint makes this clear: "[The] Plaintiffs are simply asking

17

Westhampton to cease discriminating against A.K., and meet with A.K.'s parents and representatives from Remsenburg to create an IEP for A.K. to attend an inclusive program at Westhampton with appropriate services."

It is clear that a challenge to the placement of a disabled student is a matter that is within the ambit of the administrative scheme provided by the IDEA, which explicitly provides parents with an opportunity to present a complaint to an impartial IHO "with respect to any matter relating to the identification, evaluation, or <u>educational placement of the child</u>, or the provision of a free appropriate public education to such child[.]" 20 U.S.C.A. § 1415(A) (emphasis added).

The Court has some concern as to the validity of the claims of the WB Board that it is incapable of creating a program that would accommodate the A.K.'s disability due to a lack of resources. (<u>See</u> Ambrosini Aff.) It is also, of course, understanding of the frustration expressed by the Plaintiffs as a result of the apparent refusal by Westhampton officials to meaningfully engage with the Plaintiffs in an effort to find a way to accommodate A.K. in this important matter.

However, the Plaintiffs' issues with Westhampton and their justifications for not admitting A.K. are initially better addressed to the local and state education agencies who are "uniquely well suited to review the content and implementation of IEPs . . . and to determine what changes, if any, are needed." <u>Cave</u>, 514 F.3d at 248. Indeed, the Plaintiffs did file a due process complaint against Remsenburg with an IHO seeking a "less restrictive placement" for A.K. in the Westhampton Middle School for the 2015–2016 school year. (<u>See</u> Compl., Ex. B, at p. 1.) Had they not initially settled the matter, the IHO could have directed A.K.'s placement into the Westhampton Middle School. The fact that the Plaintiffs failed to see this process through does not give them the right to proceed to federal court seeking the same relief that was and still is available to them at the state and local level under the IDEA. See <u>Hope</u>, 872 F. Supp. at 21 ("Plaintiffs in substance challenge the adequacy of the IEP created for Moyo and seek imposition of their own more expansive IEP. This is precisely the type of

remedy best fashioned by the educational experts skilled in developing such programs and provides a textbook example of the types of cases justifying administrative exhaustion.").

The Plaintiffs also allege "upon information and belief" that Westhampton has a long-standing policy of discrimination against severely disabled students. Even assuming the truth of this allegation, an IHO has the authority to authorize the relief that the Plaintiffs seek as a result of that alleged policy — namely, compelling Westhampton to accommodate the needs of A.K. and thereby the needs of other severely disabled students like him. To permit the Plaintiffs to circumvent that IDEA remedy would thwart the purpose of the IDEA exhaustion requirement, which was created so that "States have ultimate responsibility for ensuring that local educational programs comply with the IDEA." Hope, 872 F. Supp. at 23 (quoting Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1307 (9th Cir. 1992)).

Nor does the Court find the cases relied on by the Plaintiffs and described above to be controlling. That is because Andree or King involved challenges to *de facto* illegal reimbursement policies by county departments that were not the subject of the IDEA and therefore, could not be remedied by resort to the IDEA administrative process. See Andree ex rel. Andree, 311 F. Supp. 2d at 333 (challenging a policy by the DSS to assert liens against disabled students who received personal injury awards); King, 918 F. Supp. at 782 ("If, as plaintiffs allege, DSS implements that policy by seeking support orders from the Family Court for disabled children whose placements are necessary to provide them with appropriate educations, that policy violates the IDEA."). Similarly, Michaels involved a challenge to an alleged discriminatory policy across all of Western New York that could not have been remedied by a due process hearing under the IDEA because an IHO only has the authority to review the educational decisions of local school districts. See Michaels, 2004 WL 816918, at * 3.

By contrast, here the Plaintiffs challenge Westhampton's refusal to create a program that could accommodate the services required under A.K.'s IEP, an issue which, as noted above, Congress has expressly decided should first be addressed by local and state education agencies.

For these reasons, the Court finds that the Plaintiffs have failed to demonstrate that an exception to the exhaustion requirement of the IDEA is applicable. As there is no dispute that (i) the IDEA exhaustion requirement applies to all of the Plaintiffs' claims; and (ii) the Plaintiffs failed to exhaust their administrative remedies, the Court finds that it lacks subject matter jurisdiction over the Plaintiffs' claims.

### III. CONCLUSION

For the foregoing reasons, the Rule 12(b)(1) motion by the WB Board to dismiss the amended complaint in its entirety for lack of subject matter jurisdiction is granted. This action is dismissed without prejudice and with leave to renew in federal court if and when the Plaintiffs properly exhaust their claims under the IDEA. The Clerk of the Court is directed to close this case.

**SO ORDERED**
Dated: Central Islip, New York
May 9, 2016

                                           */s/ Arthur D. Spatt*
                                           ARTHUR D. SPATT
                                       United States District Judge